IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| JOSEPH M. KERSEY,<br><br>      Plaintiff<br><br>   VS.<br><br>MICHAEL J. ASTRUE, Commissioner,<br>Social Security Administration,<br><br>      Defendant | NO. 1:08-CV-139 (CWH)<br><br><br><br>**PROCEEDING UNDER 42 U.S.C. § 405(g)**<br>**BEFORE THE U. S. MAGISTRATE JUDGE** |

### O R D E R

Plaintiff JOSEPH M. KERSEY filed an application for a period of disability and disability insurance benefits on February 18, 2004. The claim was denied initially and upon reconsideration. Plaintiff requested a hearing which was held on May 12, 2006. Thereafter, the Administrative Law Judge ("ALJ") issued a hearing decision on March 29, 2007, finding that plaintiff was not disabled (Tr. 13-25). Plaintiff Kersey then sought review of the ALJ's decision by the Appeals Council, but the Appeals Council denied this request for review in an action dated June 25, 2008, thereby making the ALJ's decision the final decision of the Commissioner. Plaintiff timely pursued and exhausted his administrative remedies available before the defendant.

The case is now ripe for review under §§ 405(g) and 1383(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3). Both parties have consented to the United States Magistrate Judge conducting any and all proceedings herein, including but not limited to the ordering of the entry of judgment. The parties may appeal from this judgment, as permitted by law, directly to the Eleventh Circuit Court of Appeals. 28 U.S.C. § 636(c)(3).

In reviewing the final decision of the Commissioner, this court must evaluate both whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to the evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. *Cornelius v. Sullivan,* 936 F.2d 1143, 1145 (11th Cir. 1991); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In reviewing the ALJ's decision for support by substantial evidence, this court may not re-weigh the evidence or substitute its judgment for that of the Commissioner. "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. "In contrast, the [Commissioners'] conclusions of law are not presumed valid....The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

20 C.F.R. § 404.1520 (1985) provides for a sequential evaluation process to determine whether a claimant is entitled to Social Security disability benefits. The Secretary employs the following step-by-step analysis in evaluating a claimant's disability claims: (1) whether the claimant is engaged in gainful employment; (2) whether claimant suffers from a severe impairment which has lasted or can be expected to last for a continuous period of at least twelve months; (3) whether claimant suffers from any of the impairments set forth in the listings of impairments provided in Appendix 1; (4) whether the impairments prevent claimant from returning to his previous work; and (5) whether claimant is disabled in light of age, education, and residual functional capacity. *Ambers v. Heckler*, 736 F.2d 1467, 1470-71 (11th Cir.1984). Should a person be determined disabled or not disabled at any stage of the above analysis, further inquiry pursuant to the analysis ceases. Accordingly, if a claimant's condition meets an impairment set forth in the listings, the claimant is adjudged disabled without considering age, education, and work experience. 20 C.F.R. § 404.1520(d).

The ALJ concluded that plaintiff Kersey had "severe" impairments of major depression; anxiety disorder; impingement syndrome and degenerative joint disease of the right shoulder; degenerative disease of the lumbar spine; residuals of right foot injury; bilateral epicondylitis; and right upper extremity tremors.  However, the ALJ determined that plaintiff retained the residual functional capacity to understand, remember, and follow simple instructions and sustain concentration, persistence and pace for simple tasks, with the occasional contact with the public; to perform unskilled work at the light exertional level with no limitations on sitting; and,  to stand/walk up to 4 hours total each day during an 8 hour work day, with no climbing ladders, ropes or scaffolds, no stooping or crouching, occasional climbing stairs or ramps, occasional kneeling or crawling. The ALJ further determined that Plaintiff needed to avoid concentrated exposure to hazards such as machinery or heights.  The ALJ concluded that Plaintiff could perform work that exists in significant numbers in the national economy.

Plaintiff Kersey's right foot was crushed when a heavy piece of steel fell on his foot October 27, 2001 (Tr. 349). He had surgery shortly after the injury, and then on May 1, 2002 , he had surgery to remove spurs on his right big toe and to realign the big toe (Tr. 202, 343).

Leland C. McCluskey, M.D., Plaintiff's treating orthopedic surgeon who performed foot surgery in October of 2003 (Tr. 388), opined in July of 2004 that Plaintiff had some limited standing and walking abilities and needed to be off of his foot 50% of the time (Tr. 672).  Plaintiff had another operation on September 27, 2005,  (Tr. 669), when Dr. McCluskey removed hardware from his foot. On November 11, 2005, Dr. McCluskey noted the hardware removal operation and said "I think he needs to limit his standing and walking to about 50% of the time" (Tr. 613).

Plaintiff has been treated by doctors for the Veterans Administration, hereinafter VAMC, for gastroesophageal reflux disease, depression and anxiety (Tr. 495). In February of 2003 , he stated the depression and anxiety felt better on Paxil than Zoloft, and he was advised that he could be treated through the VA clinic in Dublin (Tr. 496).

At the VAMC, in October of 2005, following a recent surgery to his foot, plaintiff Kersey was said to be depressed, anxious and irritable (Tr. 611). In November 2005 he reported problems with his right shoulder and it was said that he needed to be seen by an orthopedist in Augusta "to take care of his right shoulder, right elbow and right great toe" (Tr. 606). X-rays on December 1, 2005, of his right shoulder, showed an irregularity of the radial head which could indicate a subacute or remote radial head infarction and he was noted to have a limited range of motion in his right elbow (Tr. 598, 604).

Plaintiff complained of a right hand tremor in April of 2006. (Tr. 617-18). He requested a neurological referral from his primary source at the Veterans Administration Medical Center (VAMC) (Tr. 617-18). Plaintiff saw neurologist, Joanna Woyiechowska, M.D., on May 31, 2006 (Tr. 633-34). Dr. Woyiechowska stated Plaintiff reported he had no tremor in any part of his body other than his right hand and he had the most trouble with drinking and writing (Tr.633). Examination revealed normal sensation and reflexes, and no spastic signs (Tr. 633). Dr. Woyiechowska diagnosed a hand tremor of unknown etiology and elbow pain (Tr. 633). She ordered a brain MRI, and Plaintiff underwent this test on August 18, 2006 with normal results (Tr. 656).

On June 5, 2006, he was seen by Dr. Gogineni, at the VAMC for a routine visit (Tr. 679). The doctors assessment was: "R hand tremor of unknown origin. Elbow pain. Depression." He planned to get an MRI of his head to rule out a "CVA" or stroke. Dr. Gogineni noted "has significant tremor" and was seeing a neurologist in Dublin. "Patient has a tremor constantly in his right had even at rest. He holds his hand against his right thigh trying to keep the tremor under control. His right thigh muscles and right leg muscles constantly quiver and shake" (Tr. 680).

Dr. Robert Brashear examined him on October 30, 2006 and said "he is walking with the help of a cane. He is having severe right extremity tremors which are exaggerated on attempt to perform any activity" (Tr. 722). His saw Dr. Gogineni on December 7, 2006 and he was still noted to have "significant constant tremor in the right arm and hand" and "he ambulates with a cane." (Tr. 721).

4

Dr. Kush Kumar examined Plaintiff on October 30, 2006, and Plaintiff complained of tremors in the right arm (Tr. 722). Dr. Kumar found degenerative changes in the right elbow but elbow motion was almost normal (Tr. 722, 724). Dr. Kumar further noted the MRI of the right shoulder showed only mild impingement with degenerative changes, and the brain MRI was "unremarkable" (Tr. 724).

Social Security also sent plaintiff for an orthopedic examination, and on June 28, 2006 Dr. Paul Peach said he had a history of multiple right foot surgeries, right upper extremity tremor etiology undetermined, chronic low back pain secondary to recurrent strain and bilateral elbow medial and lateral epicondylitis (Tr. 647). Dr. Peach said he would be limited to lifting 20 lbs. occasionally, 10 lbs. frequently. He said standing and walking were affected by the impairment and he could stand and/or walk a maximum of 4 hours in an 8-hour work day. He also said "a medically required hand held assistive device" was necessary for "minimal ambulation on level terrain." His hand written note seems to indicate a left straight cane (Tr. 651).

Plaintiff Kersey also underwent an orthopedic consultative evaluation of his right shoulder and elbow pain and his tremor on February 14, 2007 (Tr. 725-26). Shoulder x-rays showed mild degenerative joint disease of the right shoulder and elbow. Examination revealed normal sensation to light touch, 5/5 motor examination, symmetrical reflexes and a right hand tremor (Plaintiff stated the tremor only involved his right arm) (Tr. 725).

Plaintiff was seen for a consultative psychological evaluation, on June 27, 2006, by Dr. Cheryl Kaiser-Ulrey.  She said that Plaintiff suffered from "Major Depression, Recurrent, Severe" (Tr. 641). She also said he had limited but satisfactory ability to behave in an emotionally stable manner, relate predictably in social situations and deal with work stresses (Tr. 642-643).

5

*Residual Functional Capacity*

Plaintiff asserts that the ALJ failed to consider the effect of Plaintiff's hand tremor, impingement syndrome, degenerative joint disease of the right shoulder, and his need to use a cane on his residual functional capacity. He states that the ALJ erred in failing to place any limitations on the use of Plaintiff's dominant hand and arm in the residual functional capacity and did not take into account Plaintiff's use of a cane.

The Commissioner points out that although the ALJ did not specifically identify the need for a cane in his RFC finding in his decision, the ALJ proffered a hypothetical question to the VE specifically incorporating this limitation, to which the VE responded that Plaintiff could perform jobs (Tr. 787-89). The record is clear that the ALJ *did* consider this limitation, although not specifically set out in his decision. This amounts to no more than harmless error.[1]

The ALJ found that Plaintiff could perform a reduced range of light work. SSR 83-12, 1983 WL 31253, (S.S.A.) (1983), provides that where an individual's exertional capacity falls between sedentary and light exertion and there are additional non-exertional limitations, a VE can assess the effect of any limitation on the range of work at issue. In the instant case, the ALJ properly secured testimony of a VE who determined that "there would be work at both the light and sedentary, unskilled levels that the hypothetical individual could perform." (Tr. 788).

---

[1]*See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (procedural perfection in administrative proceedings is not required; the court will not vacate a judgment unless the substantial rights of a party have been affected); *see also Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) (no principle of administrative law or common sense requires the Commissioner to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result).

In his examination of plaintiff Kersey in June of 2006, Dr. Peach diagnosed bilateral elbow medial and lateral epicondylitis and a right arm tremor of undetermined etiology (Tr. 647). Despite these diagnoses, Dr. Peach opined Plaintiff could lift and carry up to 20 pounds occasionally and 10 pounds frequently, could frequently in reach, handle, finger, and feel, and could perform unlimited pushing and pulling (Tr. 651-52). The ALJ included in the hypothetical question the same abilities Dr. Peach identified with respect to the use of the arms and hands (Tr. 787). Dr. Peach's underlying findings support his opinion: Plaintiff had normal hands and fingers (Tr. 649), his elbows and forearms had normal ranges of motion (Tr. 648), motor examination was intact (Tr. 647), both hands had normal grip and dexterity, and Plaintiff had intact sensation to light touch and pinprick.

It is the functional limitations or restrictions caused by medical impairments and their related symptoms, not the impairments themselves, which may affect an individual's ability to work. *See* SSR 96-8p, 61 Fed. Reg. 34475 (1996); *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality.")

An opinion of RFC is an issue reserved to the Commissioner to be based on all of the medical findings and other evidence. See 20 C.F.R. § 404.1527(e). The ALJ properly considered the relevant evidence. As fact-finder, the ALJ was entitled to weigh this evidence as he did. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); 20 C.F.R. § 404.1545, § 404.1546.

*New Evidence*

Plaintiff Kersey asserts that new evidence that was submitted for the first time to the Appeals Council (AC) and was not part of the record at the time of the ALJ's March 29, 2007, decision, justifies remand for further consideration. He argues that it shows that he satisfied Listing 11.06, 20 C.F.R. pt 404, subpt. P, app.1, which addresses Parkinson's Disease. Plaintiff refers to a September 27, 2007, Mental Health Outpatient Note from Winston Pineda, M.D., a psychiatrist at the Veterans Administration Medical Center, who stated that Plaintiff appeared to be doing fairly well except for the persistent right arm and hand tremor (Tr. 730). Plaintiff had no other problems or complaints. Dr. Pineda assessed "Rule out Parkinsonism," and prescribed a medication used to treat Parkinson's disease. The Appeals Council considered this evidence but found it did not provide a basis for changing the ALJ's decision (Tr. 7-8, 10).

According to the Eleventh Circuit, when a plaintiff submits additional evidence to the AC and argues to this Court that the AC erred, this Court must determine whether the Commissioner's decision is supported by substantial evidence on the record as whole. *See Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1266 (11th Cir. 2007) (citing *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998), cert. denied, 525 U.S. 1124 (1999)).

Listing 11.06 provides that a person is disabled if he has parkinsonian syndrome with significant rigidity, brady kinesis, or tremor in two extremities, which singly or in combination result in sustained disturbance of gross and dexterous movements or gait and station. 20 C.F.R. 404, subpart P, appendix I, listing 11.06. The records from the VAMC show Mr. Kersey was experiencing tremor in his right hand and his right leg. In June of 2006, Dr. Gogineni said: "Patient has a tremor constantly in his right had even at rest. He holds his hand against his right thigh trying to keep the tremor under control. His right thigh muscles and right leg muscles constantly quiver and shake" (Tr. 680).

8

Plaintiff Kersey relies on a statement Dr. S. Gogineni made in June of 2006 that Plaintiff's right leg and thigh muscles quivered and shook (Tr. 680). However, the same doctor examined Plaintiff on June 23, 2007 (among the additional evidence Plaintiff submitted to the Appeals Council after the ALJ's March 2007 decision): he diagnosed a tremor in the right hand only; he mentioned no other tremor (Tr. 732). Dr. Pineda, who indicated that Parkinson's disease should be ruled out, stated Plaintiff appeared to be doing fairly well except for the persistent right arm and hand tremor, and Plaintiff had no other problems or complaints.

Moreover, the Commissioner points out that Dr. Pineda, who is a psychiatrist, did not even diagnose Parkinson's disease; he merely indicated it was a condition to be ruled out and prescribed medication used to treat the condition. This conclusion does not appear to be based upon objective medical findings. In fact, Plaintiff had a brain MRI in 2006, and the test yielded normal results. (Tr. 656). Therefore, Plaintiff is premature in alleging he satisfies the listing for Parkinson's Disease.

The undersigned concludes that the new evidence does not warrant remand, and that the ALJ's decision that plaintiff was not disabled is based upon substantial evidence considering the record as a whole.

Accordingly, IT IS ORDERED AND DIRECTED that the Commissioner's decision be **AFFIRMED** pursuant to Sentence Four of § 405 (g).

SO ORDERED AND DIRECTED, this 30th day of MARCH, 2010.



    CLAUDE W. HICKS, JR.
    UNITED STATES MAGISTRATE JUDGE

msd